# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

FEDERAL TRADE COMMISSION,

      Petitioner,

v.                               Case No:  2:17-cv-30-FtM-29CM

LEXIUM INTERNATIONAL LLC
and CELLMARK BIOPHARMA,
LLC,

      Respondents.

_____

## REPORT AND RECOMMENDATION[1]

      This matter comes before the Court upon review of the Petition of the Federal Trade Commission (the "FTC" or "Commission") for an Order Enforcing Administrative Investigative Process and Memorandum of Law ("Petition"). Doc. 1. Respondents CellMark Biopharma LLC ("CellMark") and Lexium International LLC ("Lexium") filed their responses (Docs. 4, 5), to which the FTC filed a reply (Doc. 12). For the reasons discussed below, the undersigned recommends that the Petition be granted.[2]

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The undersigned will "proceed by report and recommendation because the application sets forth all the relief requested by the [FTC], making its resolution dispositive of this matter." *Equal Emp't Opportunity Comm'n v. Royal Caribbean Cruises, Ltd.*, No. 12-MC-22014, 2013 WL 9778951, at *1 n.1 (S.D. Fla. Jan. 4, 2013), *report and recommendation adopted*, No. 12-22014-MC, 2013 WL 12133963 (S.D. Fla. June 7, 2013), *aff'd.*, 771 F.3d 757 (11th Cir. 2014).

## I.    Background

The FTC is an administrative agency of the United States established by the FTC Act, 15 U.S.C. § 41 *et seq.*, to prohibit "unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). The dissemination or the causing to be disseminated of "any false advertisement . . . likely to induce . . . the purchase of food, drugs, devices, services, or cosmetics" is unlawful and constitutes an unfair or deceptive act or practice within the meaning of the FTC Act. 15 U.S.C. §§ 45(a)(1); 52(a),(b).

Except in certain enumerated exceptions not relevant here, the FTC has the power to gather and compile information concerning, and to investigate the organization, business, conduct, practices, and management of any person, partnership, or corporation, engaged in or whose business affects commerce. 15 U.S.C. § 45(a). To carry out its investigative duties, the FTC has the power to issue civil investigative demands ("CIDs") to require any person to produce documentary material or tangible things, file written reports or answers to questions, to give oral testimony, or to require any combination thereof. 15 U.S.C. § 57b-1(c)(1). The CIDs must comply with certain requirements under the FTC Act, and must be signed by a Commissioner acting pursuant to a FTC resolution. *See* 15 U.S.C. § 57b-1(2)-(6),(i); 16 C.F.R. § 2.7(a)-(b).

On April 25, 2016, after reviewing the advertisements of Lexium and CellMark, Commission staff opened an investigation to determine whether Lexium's

and CellMark's marketing and sale of their respective products violate Sections 5 and 12 of the FTC Act. Doc. 1-2 ¶ 6; 15 U.S.C. §§ 45, 52. Lexium is a privately held Florida limited liability company with its principal place of business in Fort Myers, Florida. Doc. 1-2 ¶ 3. It markets and sells "prescription strength" health products including: (1) ADDTabz, purported to treat, cure, or mitigate symptoms associated with Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder; (2) PhenTabz, purported to cause significant weight loss comparable to prescription drugs; and (3) REMTabz, purported to treat, cure, or mitigate sleep disorders and anxiety. *Id.* CellMark is a privately held Delaware limited liability company with its principal place of business in Fort Myers, Florida. *Id.* ¶ 4. It markets and sells: (1) Cognify, purported to treat, cure, mitigate, or prevent cognitive decline caused by chemotherapy; and (2) CellAssure, purported to meet the nutritional needs of cancer patients undergoing surgery, radiation, and chemotherapy. *Id.*

Derek Vest ("Mr. Vest") is an individual who at some point owned and operated Lexium and CellMark. *Id.* ¶ 5. Mr. Vest co-founded Lexium with Mary Lirette ("Ms. Lirette"), and previously served as its sole member and president; however, as of April 2015, Ms. Lirette and Tara Vest ("Ms. Vest") have served as Lexium's sole authorized members. *Id.* Ms. Lirette and Ms. Vest are Mr. Vest's mother and sister, respectively. *Id.* Lexium currently identifies Mr. Vest as its consultant. *Id.* Mr. Vest also is the founder, Board Chairman, and sole owner of CellMark, but recently resigned as its chief executive officer. *Id.*

On May 24, 2016, pursuant to a FTC Resolution (Doc. 1-12), the Commission issued CIDs to Lexium and to CellMark. Docs. 1-2 ¶ 8; 1-13; 1-14. The Lexium CID contained forty-two interrogatories and thirty-six requests for documents. Doc. 1-13 at 14-29. The CellMark CID contained forty-three interrogatories and thirty-four requests for documents. Doc. 1-14 at 14-27. Each CID defines "Company" to include "all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing. . ." Docs. 1-13 at 5; 1-14 at 5. Each CID "covers documents and information in [the company's] possession or under [its] actual or constructive custody or control including, but not limited to, documents and information in the possession, custody, or control of [its] attorneys, accountants, directors, officers, employees, and other agents and consultants . . ." Docs. 1-13 at 10; 1-14 at 10. Both CIDs required compliance on or before June 14, 2016. Docs. 1-13 at 2; 1-14 at 2.

On June 6, 2016, Commission staff met and conferred with two CellMark representatives and CellMark's outside counsel, Richard J. Oparil, during which Commission staff proposed a rolling production schedule for CellMark to respond to the CID. Doc. 1-2 ¶ 9. During the meet and confer, CellMark informed Commission staff that it would be filing a petition to limit or quash the CID with the FTC on the basis that its principal, Mr. Vest, was then the subject of a federal grand jury investigation by the United States Attorney's Office for the Middle District of Florida and, thus, Mr. Vest would be asserting his privilege against self-incrimination.[3] *Id.*

---

[3] The letter, dated March 21, 2016, from an Assistant U.S. Attorney to Mr. Vest advises that he is "a target of a Federal Grand Jury Investigation . . . into introducing and delivering for

Regardless, two days later, attorney Oparil sent Commission staff an email confirming that "[s]ubject to the petition to quash or limit [the CID] on the Fifth Amendment privilege issue," CellMark agreed to comply with a production schedule of four two-week rounds between June 14, 2016 and July 26, 2016 within which to comply with the CID. *Id.* ¶¶ 9-10.

On June 8, 2016, Commission staff met and conferred with two Lexium officials and with attorney Oparil, who also represented Lexium. Doc. 1-2 ¶ 11. Commission staff proposed a rolling production schedule of four three-week rounds between June 14, 2016 and August 16, 2016 for Lexium to comply with the CID. *Id.* Similar to CellMark's defense, attorney Oparil informed Commission staff that Mr. Vest was asserting a privilege against self-incrimination and, on that basis, Lexium intended to file a petition to limit or quash the CID. *Id.* Nevertheless, on June 13, 2016, attorney Oparil confirmed with Commission staff by email that "Lexium believes it can meet the discovery schedule discussed on June 8." *Id.* ¶ 12.

Pursuant to Section 20 of the FTC Act,[4] Lexium and CellMark (collectively

_____

introduction into interstate commerce misbranded drugs and other matters, and possible violations of federal criminal laws." Doc. 1-15 at 1. The undersigned notes that on March 24, 2017, counsel for the FTC filed a Notice of Pendency of Other Action notifying the Court that Mr. Vest agreed to plead guilty to one count of an Information charging him with Introduction or Delivery for Introduction of Misbranded Food into Interstate Commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2). Doc. 21; *see United States v. Derek Vest*, 2:17-cr-00022-UA-MRM, Doc. 2. Mr. Vest pleaded guilty on March 31, 2017; he was adjudicated guilty, and currently is awaiting sentencing. 2:17-cr-00022-UA-MRM, Docs. 10; 13-15.

[4] A person may challenge a CID, in whole or in part, by filing a petition to limit or quash the CID with the FTC. 15 U.S.C. § 57b-1(f)(1); *see also* 16 C.F.R. § 2.10(a). The petition must specify the grounds upon which the petitioner relies, which may be based upon any constitutional or legal right or privilege of the person. 15 U.S.C. § 57b-1(f)(2). The regulations provide that prior to filing a petition with the FTC, the recipient challenging the CID "shall meet and confer with Commission staff . . . to discuss compliance and to address and attempt to resolve all issues." 16 C.F.R. § 2.7(k). Moreover, absent extraordinary

"Respondents") timely filed their petitions to limit or quash the CIDs with the FTC on June 13, 2016. Docs. 1-8; 1-18. Lexium identified Mr. Vest as a "former officer and owner of Lexium's predecessor," Gentech Pharmaceutical, LLC ("Gentech"), which later changed its name to Lexium. Doc. 1-8 at 2. Lexium also identified Mr. Vest's current role to the company as a consultant. *Id.* CellMark's Petition with the FTC identified Mr. Vest as "an officer and sole shareholder" of the company. Doc. 1-18 at 2. Lexium and CellMark sought to "limit the production of any privileged information" required to be produced pursuant to the CIDs based on Mr. Vest's and the companies' Fifth Amendment privilege against self-incrimination. Docs. 1-8 at 1, 4-8; 1-18 at 1, 3-7.

On July 5, 2016, the FTC entered an order denying CellMark's and Lexium's petitions to limit or quash the CIDs. Doc. 1-21. Regarding the requests for documents, the FTC held that the CIDs were directed to the corporations and seek only corporate documents. *Id.* at 4. It further held that Mr. Vest, acting in a representative capacity as a corporate agent, cannot assert a Fifth Amendment privilege against self-incrimination, and must produce the documents even if they are incriminating to Mr. Vest personally. *Id.* Regarding the interrogatories, the FTC held that both the Lexium and CellMark CIDs identify and list officers and employees other than Mr. Vest, and the companies can call on those individuals to respond to the interrogatories on the companies' behalf without impinging on Mr. Vest's personal Fifth Amendment rights. *Id.* at 5 (*citing United States v. Kordel*, 397 U.S.

---

circumstances, the FTC does not consider issues not raised during the meet and confer process. *Id.*

1, 8 (1970)).    Lastly, regarding Lexium and CellMark's assertion of their own Fifth

Amendment privilege against self-incrimination, the FTC held that the privilege is a

uniquely individual right that corporate entities may not invoke.    *Id.*    Accordingly,

the FTC denied both petitions and ordered Lexium and CellMark to comply with the

CIDs on or before August 15, 2016.    *Id.*

## II.    The FTC's Petition Before this Court

The FTC contends that despite the order directing compliance with the CID by

August 15, 2016, Lexium and CellMark have failed to fully comply with the CIDs.

Doc. 1 ¶¶ 24, 34.    Regarding the Lexium CID, FTC contends that Lexium has

provided no response to twenty-eight out of the thirty-six requests for documents, has

provided incomplete responses to six of the requests for documents, and has failed to

provide a certification that its CID response is complete and a certification of records

of regularly conducted activity to establish the admissibility of the documents in

response to the Lexium CID.    Doc. 12-1 ¶ 7.[5]    The FTC has categorized the missing

information as follows: product information; advertising and promotion; advertising

claims substantiation; sales and marketing practices and expenditures; billing,

customer service, and consumer complaints; lawsuits and communications with

government and other organizations, and; personnel, corporate relationships, and

recordkeeping.    Doc. 1 ¶¶ 25-31.    The FTC further asserts that Lexium has not

specified which of these categories of information it is withholding on Fifth

---

[5] Specifically, the FTC claims that Lexium has failed to respond to document requests 4-8, 11-21, 23-25, 27, 29-36, and has provided incomplete responses to document requests 2, 9-10, 22, 26, and 28 in the Lexium CID (Doc. 1-13 at 23-25).    Doc. 12-1 ¶ 7(a),(b).

Amendment grounds, and has failed to produce a privilege log consistent with the FTC Rules of Practice and the CID instructions. *Id.* ¶ 32 (citing 16 C.F.R. § 2.11(a)(1)).

With regard to CellMark CID, the FTC contends CellMark has failed to comply with Interrogatory No. 21, which directs the company to "identify any and all domain names for which Derek Vest is the registrant." Doc. 1 ¶ 34. FTC additionally contends that despite several document requests seeking "communications," "documents referring to or relating to communications," or "emails," CellMark has produced a very limited number of emails. Doc. 12-1 ¶ 17. Further, although CellMark has indicated that it is withholding responsive documents based on Mr. Vest's assertion of his Fifth Amendment privilege, it has failed to produce a privilege log. *Id.*

In response, Lexium contends that it and Mr. Vest have received identical target letters from the United States Attorney's Office and are both in jeopardy of criminal prosecution. Doc. 5 at 3-4. Lexium admits that it did not meet the schedule for compliance with the CID, but states that it produced documents and information to the FTC in June and October of 2016; and, as of the date of its response, it anticipated producing additional documents in its possession. *Id.* at 4. Lexium contends it is not withholding any corporate records based on a Fifth Amendment privilege but only Mr. Vest's personal documents in his possession, custody, or control. *Id.* Regarding the interrogatories, Lexium objects to requesting any of its managers to respond to the interrogatories and asserts its own Fifth

Amendment privilege against self-incrimination. *Id.* at 4-6. Thus, Lexium objects to producing what it has classified as Mr. Vest's "personal documents" in his possession, custody, or control, and to responding to any of the unanswered interrogatories based on the corporate entity's assertion of a Fifth Amendment privilege against self-incrimination.

CellMark, on the other hand, responds that it has complied with the CID and produced all responsive corporate documents and information, including those from Mr. Vest. Doc. 4 at 5. According to CellMark, the only issue in dispute is its response to Interrogatory No. 21, which requests a list of Mr. Vest's personal domain names that are not in CellMark's possession or control. Doc. 4 at 1, 4-5.

## III. Legal Standard and Analysis

The FTC has authority to prosecute any inquiry necessary to its duties in any part of the United States. 15 U.S.C. § 43. Whenever a person fails to comply, in part or fully, with a CID, the FTC may file, in the district court of the United States for any judicial district in which the person resides, is found, or transacts business, a petition for an order of such court to enforce compliance with the CID. 15 U.S.C. § 57b-1(e). The Court may "hear and determine the matter so presented, and . . . enter such order or orders as may be required to carry into effect the provisions of [Section 20 of the FTC Act]." 15 U.S.C. § 57b-1(h). The role of the court in a proceeding to enforce an administrative subpoena, such as the CIDs at issue, is "sharply limited" in that "inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency." *United States v. Fla. Azalea Specialists*,

19 F.3d 620, 623 (11th Cir. 1994) (quoting *Equal Emp't Opportunity Comm'n v. Kloster Cruise Ltd.,* 939 F.2d 920, 922 (11th Cir. 1991)).   Generally, subject to recognized privileges, "an administrative subpoena should be enforced if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant."   *Id.* (citation omitted); *U.S. Equal Emp't Opportunity Comm'n v. Tire Kingdom, Inc.,* 80 F.3d 449, 450 (11th Cir. 1996) (citations omitted); *United States v. Lockheed Martin Corp.,* 995 F. Supp. 1460, 1462 (M.D. Fla. 1998) (citations omitted).

Here, each Respondent's principal place of business is in Fort Myers, Florida. Docs. 1 ¶¶2-3, 7; 1-4 at 2; 5 at 2.   Accordingly, the Court may "hear and determine the matter so presented."   15 U.S.C. § 57b-1(h).   Neither Respondent contests the authority of FTC to issue the CIDs, nor alleges that the CIDs are too indefinite or that the information sought is not reasonably relevant to the FTC's investigation of Respondents.   *See* Docs. 4, 5.   Rather, the issue is whether Mr. Vest, Lexium or CellMark can assert a Fifth Amendment privilege against self-incrimination and avoid producing the documents and information responsive to the CIDs.   Upon review of the Petition and the file as a whole, the undersigned recommends the investigation at issue is within the FTC's authority, the demand is not too indefinite, and the information the FTC seeks from Respondents is reasonably relevant to its investigation of them.   The undersigned next considers the arguments related to the Fifth Amendment privilege against self-incrimination.[6]

---

[6] As mentioned in note 3, *supra*, Mr. Vest has been adjudicated guilty and entered a plea agreement as to one count of Introduction or Delivery for Introduction of Misbranded Food

The Fifth Amendment to the United States Constitution reads: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The United States Supreme Court has held that a corporation has no Fifth Amendment privilege against self-incrimination to withhold its corporate records. *Hale v. Henkel*, 201 U.S. 43 (1906). The Fifth Amendment privilege "is essentially a personal one, applying only to natural individuals." *United States v. White*, 322 U.S. 694, 698 (1944). Furthermore, the papers and effects that it protects "must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." *Id.* at 699.

The Supreme Court has held repeatedly that an individual may not invoke his personal Fifth Amendment privilege to avoid producing documents of a collective entity that are in his custody, even if his production of those documents would prove personally incriminating. *See e.g.*, *Wilson v. United States*, 221 U.S. 361 (1911); *In re Grand Jury Subpoena Dated Nov. 12, 1991, FGJ 91-5 (MIA)*, 957 F.2d 807, 809-10

_____

into Interstate Commerce. *United States v. Derek Vest*, 2:17-cr-00022-UA-MRM, Docs. 2-3; 13. The factual basis asserted in the plea agreement concern Mr. Vest's authorization of the use of amphetamine derivative DMAA (1,3-Dimethylamine) in the manufacture of various products by Lexium's predecessor, Gentech, without disclosing the presence of DMAA on the products' labeling. *Id.*, Doc. 3 at 20. As part of the plea agreement, the United States Attorney's Office agreed not to charge Mr. Vest with committing any other federal criminal offenses known to it at the time of execution of the agreement. *Id.* ¶ 8. Mr. Vest also agreed to cooperate with the United States in the investigation and prosecution of other persons; such cooperation to include the production of all books, papers, and documents in Mr. Vest's possession or control. *Id.* ¶ 8. The United States agreed that no self-incriminating information which Mr. Vest might provide would be used in determining the applicable sentencing guideline range, subject to any restrictions set forth in the United States Sentencing Guidelines. *Id.* ¶ 9. Although a review of the plea agreement indicates that the issues related to the CellMark CID are moot, the FTC has not withdrawn its Petition and Lexium has not withdrawn its objection. Accordingly, the undersigned proceeds with analyzing both CIDs at issue.

(11th Cir. 1992) (listing cases).

As the Supreme Court has explained,

> individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.

*White,* 322 U.S. at 699 (citations omitted). Because artificial entities such as corporations may only act through their agents, when their records are subpoenaed, the custodian's act of production is not deemed a personal one, but rather an act of the artificial entity. *Braswell v. United States,* 487 U.S. 99, 109-10 (1988). To allow a custodian to withhold production of corporate documents "would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Id.* at 110. Thus, even "[i]f the corporation were guilty of misconduct, [a corporate officer] could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures." *Wilson,* 221 U.S. at 384. The same principles apply when corporate records are in the possession of an individual no longer employed by the corporation. *In re Grand Jury Subpoena,* 957 F.2d at 812.

Here, the Lexium CID is directed to the company. Doc. 1-13 at 2, 19-25. Upon review of the requests at issue, it is abundantly clear that the CID seeks only

corporate documents.  *See* Doc. 1-13 at 23-29.  The CID requests:

- Marketing or advertising plans for each Tabz Product[7] (Document Request #4);

- All communications between the Company and any advertising agencies, media outlets, and educational institutions concerning the promotion, dissemination, or advertisement of Tabz Products (Document Requests ## 5-7);

- Marketing and consumer research concerning Tabz Products (Document Request #8);

- All documents relating to any study conducted in any Tabz Products (Document Request #11);

- All documents sufficient to show the product specification[8] of each Tabz Product (Document Request #12) as well as documents relating to the verification of the laboratory examination and testing methodologies used to determine whether any Tabz Products meets all product specifications (Document Request #20);

- All documents sufficient to show that each Tabz Product meets all product specifications as established in the master manufacturing record (pursuant to 21 C.F.R. §§ 111.205 & 111.210) for such Tabz Product (Document Request #13);

- A copy of each master manufacturing record (established pursuant to 21 C.F.R. §§ 111.205 & 111.210) for each Tabz Product (Document Request #14);

- All documents showing the means established to assure that such Tabz Products meet product specifications consistent with any purchase order from a supplier or manufacturer (Document Request #15)

- All documents relating to any tests or examinations conducted to confirm the identity, strength, or composition of any dietary ingredient contained in each Tabz Product (Document Request #16)

---

[7] The Lexium CID defines "Tabz Product(s)" as "[a]ny cognitive function product, including ADDTabz and AddTabzRX; [a]ny weight loss product, including PhenTabz, PhenTabz Teens, and Phen TabzRX; and [a]ny sleep aid product, including REMTabz and REMTabzRX."  Doc. 1-13 at 3.

[8] The CID defines product specification as "the criteria that a product must meet for identity, strength, and composition, as established pursuant to 21 C.F.R. § 111.70(e)."  *Id.*

- For components that are not dietary ingredients, all documents relating to any tests or examinations conducted to confirm the identity of those components or to determine whether those components comply with component specifications (as established pursuant to 21 C.F.R. § 111.70(b)(2)) (Document Request #17) as well as documents relating to any certificate of analysis from the supplier of the component (Document Request #18) and documents sufficient to show the qualification of any supplier for the purpose of relying on the supplier's certificate of analysis (Document Request #19);

- All documents relating to consumer testimonials or expert endorsements for any of the Tabz Products (Document Request #21);

- All documents relating to the Company's decision to market or sell any of the Tabz Products, including, but not limited to, emails, memos, market research, studies, reports, analyses, or surveys about consumer attitudes, beliefs, or understanding about any continuity program or negative option (Document Request #23);

- All documents relating to the Company's refund policies or practices (Document Request #24);

- All documents used in preparation for or during communications with any consumer, including scripts, outlines, guides, suggested responses to questions, policies, manuals, or procedures for handling consumer product requests and consumer complaints and inquiries (Document Request #25);

- All documents referring or relating to communications between sales or customer service representatives, working for the Company or on the Company's behalf, and consumers who purchased or were interested in purchasing Tabz Products (Document Request #27);

- All documents relating to consumer complaints concerning the Tabz Products (Document Requests ## 29, 31);

- All documents and communications between the Company and any website or organization that reviews or evaluates consumer products concerning the use or performance of the Tabz Products (Document Request #30);

- All documents relating to any communications between the Company or any affiliated person or entity and the National Advertising Division of the Council of Better Business Bureaus, the Electronic Retailing Self-Regulation Program, or the Food and Drug Administration concerning the Tabz Products (Document Request ## 32-33);

- All complaints and answers in any state or federal court litigation, initiated since January 1, 2012 or currently pending, in which the Company or any affiliated person or entity, is named as a defendant, and that relates or refers to Tabz Products (Document Request #34);

- All documents relating to any communications between the Company, or any affiliated person or entity, and any media outlet relating to the Company or any Tabz Products (Document Request #35);

- All documents relating to any communications between the Company, or any affiliated person or entity and any medical or health interest group or organization relating to the Company or any Tabz Products, including but not limited to a letter dated May 29, 2013 from the National Eating Disorders Association to Gentech Pharmaceutical regarding the marketing of weight loss supplements to teenagers.

Doc. 1-13 at 23-29.

Because Mr. Vest is acting as a consultant for Lexium (Doc. 1-8 at 2), he is acting in a representative capacity as a corporate agent. *Wilson,* 221 U.S. at 380. Mr. Vest must produce the documents, even if they are incriminating to him personally. *Id.* Although Lexium contends that it is not withholding corporate documents but only personal documents in Mr. Vest's possession and control, the CID only requests corporate documents, all of which clearly relate to the Tabz Products that the company markets and sells. Doc. 1-13 at 23-29. Accordingly, any withheld documents responsive to the CIDs would be corporate documents, and Lexium has offered no argument or rationale why the responsive documents would be deemed Mr. Vest's private documents or in his possession in a purely personal capacity.[9] *White,*

---

[9] *Cf.* 16 C.F.R. § 2.11, providing:

> Any person withholding information or material responsive to an investigational subpoena, CID, access order, or order to file a report issued pursuant to § 2.7 of this part, or any other request for production of material

322 U.S. at 699. Simply because Mr. Vest may wish to withhold the documents for personal reasons does absolve the company from the need to comply with the CID. *In re Grand Jury Subpoena*, 957 F.2d at 812; *cf. Wilson*, 221 U.S. at 378 ("Plainly [appellant] could not make these books his private or personal books by keeping personal letters in them."). Indeed, even if Mr. Vest is no longer associated with Lexium, he continues to hold the documents in a representative capacity. *In re Grand Jury Subpoena*, 957 F.2d at 812.

Similarly, the CellMark CID is directed to the company. Doc. 1-14 at 2. The types of documents requested are very similar, and some identical, to the documents requested of Lexium, with the exception of dates, company names, and products. *Compare* Doc. 1-13 at 23-29 *with* Doc. 1-14 at 22-28. Because Mr. Vest is acting as an officer of CellMark (Doc. 1-18 at 2), he is acting in a representative capacity as a corporate agent. *Wilson,* 221 U.S. at 380. Mr. Vest must produce the documents, even if they are incriminating to him personally. *Id.*

Relying on *United States v. Hubbell*, 530 U.S. 27 (2000), Respondents argue

---

issued under this part, shall assert a claim of protected status, as that term is defined in § 2.7(a)(4), not later than the date set for the production of the material. The claim of protected status shall include a detailed log of the items withheld, which shall be attested by the lead attorney or attorney responsible for supervising the review of the material and who made the determination to assert the claim. A document, including all attachments, may be withheld or redacted only to the extent necessary to preserve any claim of protected status. The information provided in the log shall be of sufficient detail to enable the Commission staff to assess the validity of the claim for each document, including attachments, without disclosing the protected information. The failure to provide information sufficient to support a claim of protected status may result in a denial of the claim.

*Id.*

that Mr. Vest can assert his right against self-incrimination to avoid responding to the CIDs because the simple act of producing the documents may incriminate him because production would admit their "existence and authenticity." Docs. 4 at 10; 5 at 5 (incorporating CellMark's response). In *Hubbell*, the Supreme Court recognized that the act of producing documents may involve a testimonial aspect that may enjoy the Fifth Amendment privilege, independent of whether the contents of the documents at issue are protected. 530 U.S. 27 at 36. The act of production itself may sometimes implicitly communicate a "statements of fact," such that the witness' act of production can serve as an admission that the requested papers exist, are in his possession or control, and are authentic. *Id.* In such circumstances, the Supreme Court held that the government could not rely on the act of production to mount a case against the custodian in a subsequent criminal prosecution. *Id.* at 42-45.

The Court in *Hubbell*, however, did not address whether an individual may rely on the Fifth Amendment privilege to avoid the production of corporate records that he holds in a representative capacity. *See* 530 U.S. 27. In that respect, there is nothing to suggest that the Court deviated from its prior holding in *Braswell*, which is more analogous to the instant case. *Braswell*, 487 U.S. 99. Similar to Respondents' arguments, the petitioner in *Braswell*, who was president and sole shareholder of the two active corporations in question, argued that the act of producing the documents has independent testimonial significance, which would incriminate him personally. *Id. at 103*. The Supreme Court rejected the

petitioner's argument, emphasizing that the act of production would not be deemed a personal act but an act of the corporation. *Id.* at 110. The Court emphasized that a custodian must produce records and documents that he holds in a representative capacity, "even though production of the papers might tend to incriminate [him] personally." *Id.* at 110-11 (citing *White*, 322 U.S. at 699).

Several courts having considered whether the act of production doctrine applies to corporate records post-*Hubbell* have held that corporate officers cannot rely on the Fifth Amendment to avoid production of corporate documents. *See e.g.*, *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 263 (3d Cir. 2015) ("[T]here is no reason to suspect that *Hubbell* altered, in any way, the analysis set forth in *Braswell*. The Supreme Court did not mention, much less revisit, the collective entity rule and cited *Braswell* only in a footnote for the proposition that the act of producing subpoenaed documents may have some protected testimonial aspects.); *Armstrong v. Guccione*, 470 F.3d 89, 98 (2d Cir. 2006) ("[W]e reject any suggestion that *Hubbell* so undermined *Braswell* that we are no longer compelled to follow its holding."); *Amato v. United States*, 450 F.3d 46, 50-53 (1st Cir. 2006) (in a post-*Hubbell* decision, noting that *Braswell* did not alter its precedent that "that the act-of-production doctrine is not an exception to the collective-entity doctrine even when the corporate custodian is the corporation's sole shareholder, officer and employee."). The undersigned recommends a same holding here would be accordant with the Supreme Court's "consistent view that the privilege against compulsory self-incrimination should be 'limited to its historic function of protecting only the natural individual from

compulsory incrimination through his own testimony or personal records.'" *Bellis v. United States*, 417 U.S. 85, 89-90 (quoting *White*, 322 U.S. at 701).

Turning next to the interrogatories, Mr. Vest can invoke his Fifth Amendment privilege against self-incrimination in refusing to answer the interrogatories. *U.S. v. Kordel*, 397 U.S. 1, 7 (1970) ("Surely, [corporate officer] was not barred from asserting his privilege simply because the corporation had no privilege of its own."). But, service of interrogatories to the corporation obliges the corporation to "appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation." *Id.* at 9 (footnote omitted). The corporation cannot avoid this obligation by appointing only officers who would assert a fear of self-incrimination in refusing to answer the interrogatories. *Id.*; *see also* 8 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2018 (3d. ed. 2010) ("[T]he burden on the corporation is to designate someone to answer on its behalf who can furnish as much information as is available to the corporation without fear of self-incrimination."). As the Supreme Court has stated,

> [i]t would indeed be incongruous to permit a corporation to select an individual to verify the corporation's answers, who because he fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have. Such a result would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents.

*Kordel*, 397 U.S. at 8 (quotations and footnotes omitted).

Here, CellMark specifically objects to Interrogatory No. 21 which requires CellMark to disclose "any and all domain names for which Derek Vest is the

registrant." Docs. 4 at 4; 4-1 ¶¶ 10, 11. CellMark states the list of Vest's personal domain names is not in CellMark's possession, custody, or control. Docs. 4 at 4; 4-1 ¶ 11. CellMark argues that to require the company to provide further answers to interrogatories with information that could only come from Mr. Vest would be an impingement on Mr. Vest's privilege against self-incrimination because the act of answering the interrogatories would have a testimonial aspect and an incriminating effect. Doc. 4 at 6-11. Specifically, it states that "the FTC is essentially asking this Court to . . . order CellMark to interview Mr. Vest, obtain information from him, and provide supplemental interrogatory responses under oath to the FTC." *Id.* at 10. CellMark argues that the government can simply compare CellMark's initial interrogatory responses with any supplemental responses, and readily deduce what new information can be attributed to Mr. Vest. *Id.*

The FTC responds that it is seeking a full list of domain names registered by Mr. Vest that relate to CellMark products. Doc. 12 at 8. The FTC states that it is not seeking a Court order directing CellMark to compel Mr. Vest to provide testimonial responses to Interrogatory No. 21, but is asking the Court to direct CellMark to provide a complete list of domain names responsive to Interrogatory No. 21 by examining corporate records, including those in Mr. Vest's possession, and consulting with knowledgeable personnel *other than* Mr. Vest in preparing the responses. Doc. 12 at 9.

The undersigned agrees that Mr. Vest cannot be compelled to answer the interrogatories for fear of self-incrimination. *Kordel*, 397 U.S. at 7. The

undersigned also recommends that the FTC's request is not outside the bounds of what the company's obligation already is, which is to appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to CellMark. *Id.*

Furthermore, pursuant to Section 20 of the FTC Act, a corporation's response to interrogatories must "be submitted under a sworn certificate . . . by any person responsible for answering each . . . question, to the effect that all information required by the demand" in the corporation's "possession, custody, control, or knowledge" has been submitted. 15 U.S.C. § 57b-1(c)(13). Thus, a corporation must "select an officer or employee to gather and obtain from books, records, other officers or employees, or other sources, the information necessary to answer the interrogatories and sign them on behalf of the corporation not himself." *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 417, 419 (N.D. Ill. 1977). This requirement is analogous to Federal Rule of Civil Procedure 33(b)(1)(B), which requires that a public or private corporation may answer by any officer or agent, who must furnish such information available to that party. Fed. R. Civ. P. 33(b)(1)(B). Moreover, "[b]ecause [Rule 33(b)(1)(B)] authorizes either an officer or an agent to answer, it clearly allows answers by an attorney." 8B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2168.1 (3d. ed. 2010). Similarly, here, Respondents can appoint any officer, agent, employee, or even its attorney to answer the interrogatories. The FTC states that, through public sources, its staff has learned that Mr. Vest registered several domain names that appear directly relevant

to CellMark's business.   Doc. 12-1 ¶ 14.   CellMark must comply with its duty and examine its books, records, other officers or employees, or other sources, to obtain the information necessary to answer the interrogatories.

Lexium, on the other hand, contends that its only two managers, Ms. Lirette and Ms. Vest, should not be compelled to respond to the FTC's interrogatories because "the company they own has received a target criminal letter."   Docs. 5 at 4; 5-1 ¶ 12.[10]   Lexium states Ms. Lirette and Ms. Vest are the only persons who could prepare the interrogatory responses and sign the certification under penalty of perjury as required by the CID.   Doc. 5 at 6.   Aside from attaching a letter from the United States Attorney for the Middle District of Florida advising Lexium that the company is a target of a Federal Grand Jury investigation (Doc. 5-2), Lexium has provided no other information whether Ms. Lirette and Ms. Vest received similar letters or why they believe answering the interrogatories might incriminate them personally.   As stated above, corporations have no Fifth Amendment privilege against self-incrimination.   *White*, 322 U.S. at 699.   A blanket assertion of the individual privilege against self-incrimination is not justifiable under the Fifth Amendment.   *United States v. Argomaniz*, 925 F. 2d 1349, 1356 (11th Cir. 1991) (citation omitted).

---

[10] In a declaration, Ms. Vest states:

> Lexium has two managers – [Ms.] Lirette and Myself – and we are the only two persons who could sign the certification required by the CID. Lexium, for itself and its representatives has asserted its right against self-incrimination. Further, Vest has asserted his Fifth Amendment rights. Therefore, a further response to the FTC's interrogatories would be contrary to our Fifth Amendment rights.

Doc. 5-1 ¶ 12.

"The privilege applies only in 'instances where the witness has reasonable cause to apprehend danger' of criminal liability." *Id.* at 1353 (quoting *Hoffman v. United States,* 341 U.S. 479, 486 (1951)). Although Ms. Lirette and Ms. Vest have not asserted any grounds to believe that they, individually, can invoke the Fifth Amendment privilege, even if they did, the undersigned recommends that Lexium must still appoint any officer, agent, employee, or even its attorney to answer the interrogatories.

Lastly, Respondents argue that the Supreme Court's decisions in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), holding that the government cannot prohibit political expenditures by corporations based on their corporate identity, and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), recognizing that a closely-held corporation had religious liberties, should be read expansively to extend the Fifth Amendment privilege against self-incrimination to corporations. Docs. 1-8 at 6-7, 4 at 11, 5 at 6, 1-18 at 5-6. Both *Citizens United* and *Hobby Lobby* addressed the application of the First Amendment to corporations, and neither addressed nor mentioned the application of the Fifth Amendment right against self-incrimination to corporations. *See Citizens United*, 558 U.S. 310; *Hobby Lobby*, 134 S. Ct. 2751.[11] Respondents recognize that "neither the FTC nor this Court can overrule existing Supreme Court precedent," but raise the argument to preserve the

---

[11] In a footnote, the *Hobby Lobby* decision mentions that "The Hahns and Conestoga also claimed that the contraceptive mandate violates the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 553, but those claims are not before us." 134 S. Ct. at 2765 n.13.

issue for appeal. Doc. 4 at 11; 5 at 6. This Court is bound to follow binding Supreme Court precedent, as discussed above, until the Supreme Court sees fit to reconsider the cases, "regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 253 (1998) (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989)). Indeed, the Eleventh Circuit has stated that it "take[s] . . seriously" the Supreme Court's repeated admonition that lower courts should not base their decisions on predictions that the Supreme Court will overturn one of its own decisions." *United States v. Greer*, 440 F.3d 1267, 1275 (11th Cir. 2006) (listing cases, and stating "[w]e take that admonition seriously."). So, too does this Court.

## IV. Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, the undersigned respectfully recommends that the Petition of the Federal Trade Commission for an Order Enforcing Administrative Investigative Process and Memorandum of Law be granted and that Respondents be ordered to fully comply with the CIDs.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. Petition of the Federal Trade Commission for an Order Enforcing Administrative Investigative Process and Memorandum of Law be GRANTED.

2. That the Court enter an Order requiring Respondents Lexium International LLC and CellMark Biopharma, LLC to fully comply with the CIDs

issued by the Federal Trade Commission within ten (10) days of the Order or at such later date as the Federal Trade Commission establishes.

DONE and ENTERED in Fort Myers, Florida on this 1st day of June, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Honorable John E. Steele
Counsel of record